UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLASS ACTION MASTER
FILE NO. 1:07-md-01790-JLT
(Relating to All Cases)

IN RE VOLKSWAGEN and AUDI
WARRANTY EXTENSION LITIGATION

MEMORANDUM
March 24, 2011

This matter came before the court on March 11, 2011 on Class Plaintiffs' Motion for Attorneys' Fees and Costs (the "Fees Motion") [#174], all pursuant to Fed. R. Civ. P. 23(h), 52(a) and 54(d)(2)(D).

PROCEDURAL HISTORY

For the procedural history leading to these Findings, Conclusions and Order attention is directed to the Memorandum and Order Approving Class Action Settlement issued on March 24, 2011.

On December 20, 2010, the Fees Motion was filed, followed by Defendants' Opposition thereto, along with oppositions and comments by other counsel and individuals. A hearing on the Fees Motion was held before the duly appointed Special Master[1] on February 14, 2011. At that hearing, the Special Master considered, by way of oral argument, the positions of Class Counsel and of counsel for Defendants and, thereafter, submitted his recommendations to the court.[2]

---

[1] See Orders [##120 and 120-1].

[2] See Findings of Fact, Conclusions of Law & Recommendations of the Special Master [#248].

The Special Master reported to this court in his findings and recommendations that not a single attorney or class member appeared at the February 14, 2011 hearing to speak against the Fees Motion. Only Class Counsel and Defendants' attorneys addressed the issues at that time. Similarly, at the March 11, 2011 hearing before this court, only one attorney, aside from Class Counsel and the attorneys for Defendants, appeared and spoke, briefly, in opposition. Consequently, the "triangular construct" of Mathews v. Eldridge[3] to determine whether this court and the Special Master afforded all counsel "the opportunity to be heard 'at a meaningful time and in a meaningful manner,'" was clearly met.[4]

Notice of the class action settlement and the fee application was sent by first class mail to 1,603,031 Settlement Class Members and publication thereof appeared twice in the National Edition of USA Today, on December 27, 2010 and on January 25, 2011. Included in that Notice is advice that an informational website has been established where Class Members can obtain extensive detail about these consolidated cases, the proposed settlement and instructions as to how a claim should be presented. That website may be found at https://www.vwoilsludge settlement.com. There is included in the informational website a section entitled "How will the lawyers get paid?" The answer provided reads, in material part:

> Class Counsel will ask the Court for up to $37.5 Million for attorney's fees and up to approximately $1.75 Million for reimbursement of costs and expenses incurred in the prosecution of these actions. The Defendants do not dispute Class Counsels' entitlement to an appropriate fee and reimbursement for costs and expenses, but may oppose the amount requested by Class Counsel. The Defendants will pay whatever attorneys' fee and cost and expenses that the Court awards without reducing or limiting any of the benefits

---

[3] 424 U.S. 319, 333 (1976).

[4] See id.; see also In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 301 (1st Cir. 1995) [hereinafter Thirteen Appeals].

available to Settlement Class Members.

This notification is not a "clear sailing agreement," but rather a "ceiling clause." It includes Class Counsels' promise not to seek a fee above an agreed-upon ceiling, instead of being an agreement by Defendants not to contest a fee application up to the amount of that ceiling. This court has carefully scrutinized the effect of that clause to insure that in securing it, counsel have not bargained away anything of value to the Settlement Class.[5] Having done so the court in no way finds or suspects Class Counsel of any collusion or other untoward behavior in the negotiation of the Agreement of Settlement, including the fees ceiling clause. On the contrary, Class Counsel's efforts on behalf of the Settlement Class are to be commended.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This court takes as its starting point the "American Rule" regarding attorneys' fees. Under that rule, each of the parties to a civil action is required to pay his, her or its own attorney fees and costs in the absence of some statutory provision imposing a fee-shifting requirement.[6] In the context of a class action settlement in the First Circuit, however, fees may be awarded, as part of the court's equitable powers over such settlement agreements, from a fund created to benefit the class. "A common fund award 'is an equitable award made at the discretion of the district court.'"[7]

There are two methods applied in the assessment of attorneys' fee applications: the

---

[5] See Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 525 (1st Cir. 1991).

[6] Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 245 (1975). For a detailed history of the application of the American Rule in the federal courts, see id. at 247–71.

[7] United States v. 8.0 Acres of Land, 197 F.3d 24, 33 (1st Cir. 1999) (citing Kargman v. Sullivan, 589 F.2d 63, 69 (1st Cir. 1978)).

lodestar method[8] and the percentage-of-the fund ("POF") method.[9]

Under the lodestar method, each attorney's reasonable hourly rate is multiplied by the number of hours reasonably expended on the litigation. This method often is used in the application of statutory fee-shifting provisions to "reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation."[10]

The POF method is in many respects the same as a contingent-fee approach. It "awards counsel a variable percentage of the amount recovered for the class."[11] The POF method produces an "equitable award made at the discretion of the district court."[12] Under the POF method, the court has "extremely broad" discretion in determining an appropriate fee.[13] A court must shape the fee "based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation."[14]

In the First Circuit, either the lodestar or the POF method can be used to evaluate fee

---

[8] See Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161, 167–68 (3d Cir. 1973).

[9] See 8.0 Acres of Land, 197 F.3d at 33.

[10] In re Rite Aid Securities Litig., 396 F.3d 294, 300 (3d Cir. 2005).

[11] In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 294, 300 (3d Cir. 2005).

[12] 8.0 Acres of Land, 197 F.3d at 33.

[13] Mann & Co. PC v. C-Tech Indus., Inc., No. 08-11312, 2010 U.S. Dist. LEXIS 99222, at *3 (D. Mass. Feb. 5, 2010) (quoting Thirteen Appeals, 56 F.3d at 309).

[14] Thirteen Appeals, 56 F.3d at 305 (citing Camden I Condo Ass'n, Inc. v. Dunkle, 946 F.2d 768, 771 (11th Cir. 1991)).

petitions in complex litigation. In Thirteen Appeals, however, the First Circuit said that the POF method is the "prevailing praxis," partly because it is less burdensome on courts in its administration.[15]

Also, neither the Special Master nor the court "is . . . obligated to convene an evidentiary hearing as a means of resolving every attorneys' fee dispute. . . . [F]lexibility is the watchword.. . . [F]lexibility implies substantial discretion."[16]

Federal Rule of Civil Procedure 23(h) is the governing rule for the purposes of this Fees Motion. Rule 23(h) provides that, in a certified class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized . . . by the parties' agreement."[17]

The Parties' agreement in this matter is the Agreement of Settlement considered by this court at its March 11, 2011 Fairness Hearing. Two aspects of the Agreement of Settlement are pertinent for these purposes. First, Section VI.A.2 provides:

> It is expressly understood and confirmed that the parties have not agreed to any choice, selection or waiver of state or federal law to be applied to any aspect of the construction, preliminary or final approval, or application of any provision of this Agreement of Settlement, including but not limited to attorney fees and costs.[18]

For that reason, in the absence of an express choice-of-law clause, where, as here, a fee award is a result of the parties' private agreement, federal law governs the decision.[19] This court is fully

---

[15] Id. at 307.

[16] Id. at 301–02 (citations omitted).

[17] Fed. R. Civ. P. 23(h) (emphasis added.)

[18] Agreement of Settlement ¶ VI.A.2 [#160] (emphasis added).

[19] See, e.g., Dewey v. Volkswagen of Am., 728 F. Supp. 2d 546, 588–89 (D.N.J. 2010). Many aspects of the Dewey case are strikingly similar to those before this court.

5

aware that Count I of the Plaintiffs' Second Amended Class Action Complaint [#57] relies upon the New Jersey Consumer Fraud Act[20] along with other similar state consumer fraud laws that contain fee-shifting provisions.[21] That Complaint, however, is not limited to the various state consumer fraud laws, including counts and claims for breach of contract (Count II), breach of implied warranty (Count III), unjust enrichment (Count IV), and declaratory judgment (Count VII).[22]

What is now before this court is an Agreement of Settlement, not a consent decree or a judgment after trial of the underlying cases. Plaintiffs have no judgment in their favor, either on a dispositive motion or after trial. Indeed, Defendants steadfastly assert their innocence of any tortious or contractual wrongdoing or harm to any Class Member. Consequently, the state law fee-shifting statutes do not apply. It is clear in the First Circuit that if a fee award is sought pursuant to an agreement between the parties in a federal class action settlement, federal law governs the decision.[23] Indeed, "[s]ettlement of a case already in progress in the federal courts implicates matters of considerable federal concern, entirely apart from the substantive merits. In such situations the federal interest is sufficiently great that the proper rule of decision may well be

---

[20] N.J.S.A. § 56.8 - 1 et seq.

[21] This MDL consists of seven consolidated federal actions that originally were filed in New Jersey, Florida, California, Massachusetts, Pennsylvania, Ohio and Illinois.

[22] See Pls.' 2d Am. Class Action Compl. [#57].

[23] See Weinberger, 925 F.2d at 522 n.5; see also In re Diet Drugs, (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig., 582 F.3d 524, 540 (3d Cir. 2009); In re TJX Cos. Retail Sec. Breach Litig., 584 F. Supp. 2d 295, 299 (D. Mass. 2008) [hereinafter In re TJX Cos.].

6

a uniquely federal one."[24]

Nor are Plaintiffs here "prevailing parties" under any of the state consumer fraud statutes and for that reason as well, those statutes' fee-shifting provisions do not apply to the Fees Motion.[25]

Section VI.C of the Agreement of Settlement itself deals specifically with attorney fees and costs. Pertinent for these purposes are portions of subsections (1), (2) and (3). Subsection (1) permits "Class Counsel . . . [to] submit an application to the Court for an award of reasonable attorneys' fees and expenses."[26] Also, "[e]ach Settling Party reserves all rights to appeal from a Class Counsel fees and expenses award.."[27] Further, the "Class Counsel fees and expenses award and the Final Judicial Approval shall be separate so that the appeal of one shall not constitute an appeal from the other."[28]

---

[24] Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 853 n.3 (1st Cir. 1987) (citing Gamewell Mfg., Inc. v. HVAC Supply, Inc., 715 F.2d 112, 115 (4th Cir. 1983).

[25] See, e.g., Dewey, 728 F. Supp. 2d at 589 n.62; see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603–04 (2001); Aronov v. Napolitano, 562 F.3d 84, 88–91 (1st Cir. 2009); Smith v. Fitchburg Pub. Schs., 401 F.3d 16, 21–23 (1st Cir. 2005); Doe v. Boston Pub. Schs., 358 F.3d 20, 24–25 (1st Cir. 2004). In Buckhannon, the Supreme Court affirmed the Fourth Circuit's holding that "[a] person may not be a 'prevailing party' . . . except by virtue of having obtained an enforceable judgment, consent decree, or settlement giving some of the legal relief sought." 532 U.S. at 602 (quoting S-1 & S-2 v. State Bd. of Ed. of N.C., 21 F.3d 49, 51 (1994)). What was at issue in Buckhannon—and rejected by the Supreme Court—was an argument to the effect that a plaintiff is a prevailing party if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. See id.

[26] Agreement of Settlement ¶ VI.C.1 [#160].

[27] Agreement of Settlement ¶ VI.C.1 [#160].

[28] Agreement of Settlement ¶ VI.C.1 [#160].

7

Subsection (2) mandates that "Class Counsel fees and expenses shall be paid entirely and exclusively by Defendants and shall not diminish, invade, or reduce, or be derived from benefits afforded to Settlement Class Members under this Settlement Agreement."[29] To perhaps a significant degree, this Section indicates that the value of the benefits afforded to the Class Members may not be the controlling factor in establishing the amount of fees to be awarded. If, however, the fee-shifting statutes do not apply, then this court must look at the fees in issue here in a manner closely resembling a contingent fee process. In other words, this court must determine a reasonable percentage of the benefit achieved by Class Counsel for the Settlement Class.

Subsection (3), among other things, recites that

> [a]ll matters pertaining to an award of Class Counsel fees and expenses, including, but not limited to, any dispute amongst class/plaintiffs' counsel as to their respective attorney's fees and expenses, have been referred to the Honorable Allan van Gestel, Special Master. Judge van Gestel's recommendation with respect to Class Counsel fees and expenses shall be made to the Court.[30]

It is significant that the Fees Motion under consideration was filed by Class Counsel pursuant to the Agreement of Settlement. Attorneys' services were rendered, but fees were generated and costs were incurred by more that just Class Counsel. Some of the Settlement Class Representatives[31] had counsel of their own who participated, at least in part, in elements of what

---

[29] Agreement of Settlement ¶ VI.C.2 [#160]. Consistent with the language chosen, this court reads the phrase "diminish, invade, or reduce, or be derived from" as meaning essentially "paid out of."

[30] Agreement of Settlement ¶ VI.C.3 [#160].

[31] The "Settlement Class Representatives" are defined in the Agreement of Settlement. They are: James Craig, Laura Cole-Breit, Scott Ryder, Eric Emanuelson and Margaret Moreau, Matthew Leonetti and Stacy Leonetti, David and Carrie Marks, Marie Montag, Carol Carter,

8

are, or became, part of Plaintiffs' side of the cases. Still further, counsel other than those who represented Settlement Class Representatives, such as local counsel, also played roles. Consequently, the fees and costs ultimately awarded must be allocated by Class Counsel to any such other attorneys, based upon their respective contributions to the litigation or any agreements or arrangements made among them. With the settlement now approved and fees by this Order awarded, therefore, after all appellate rights are either exhausted or not pursued, the Special Master will, if necessary, establish a process to address those further fee allocations.[32]

This complexity presents yet another reason why the lodestar method is not useable here. The only lodestar information presented to this court is that of Class Counsel. The lodestar elements—indeed even the full identity—of such additional counsel who may be entitled to some degree of compensation is not now before this court.

In making fee awards, a court must function "as a quasi-fiduciary to safeguard the corpus of the [settlement] fund for the benefit of the plaintiff class."[33] "The difficulty for both fee-setting and fee-reviewing courts, in a field so susceptible to arbitrariness, is the achievement of decision-making that is fair to the parties and understandable to the community at large yet not

---

Judith Yarkony, Megan Shero, Eugenia Diveroli, and Ken Winokur. See Agreement of Settlement ¶ I.23 [#160].

[32] In this regard the Special Master has already advised all parties that he intends to follow an approach similar to that of Judge Young in In re Indigo Securities Litigation, 995 F. Supp. 233, 235 (D. Mass. 1998). See Supplemental Mem. Process Att'ys' Fees & Costs Hr'g, 7–8.

[33] Weisburgh v. Fid. Magellan Fund (In re Fid./Micron Sec. Litig.), 167 F.3d 735, 736 (1st Cir. 1999) (citing Cook v. Niedert, 142 F.3d 1004, 1011 (7th Cir. 1998)); see also Boeing Co. v. Van Gemert, 444 U.S. 472, 478–82 (1980).

9

unnecessarily burdensome to the courts themselves."[34]

At the Final Fairness Hearing, this court undertook a detailed assessment of the terms of the proposed settlement, the interests of the Settlement Class Members and any third parties that might be affected by the settlement, and the circumstances of the litigation.[35]  In addition, this court is "cognizant not only of its responsibility to the class but also to the public to ensure that the fees awarded here are reasonable."[36]

The Fees Motion and the papers and arguments supporting it, as presented by Class Counsel, seek attorney fees in the amount of $37.5 million plus costs and expenses of $1,195,234.43.[37]  The Special Master, after his hearing and assessment, recommended $30 million in fees and costs of $1,195,234.43, for an aggregate amount of fees and costs of $31,195,234.43.

Class Counsel assert that they have created a "fund" benefitting the Settlement Class Members and seek an equitable approach to their fees, utilizing the POF method.  Defendants argue that no fund has been created and they thus press for a lodestar method.  Others, in written submissions, just claim that $37.5 million is too much.[38]  And then there are a few attorneys, who

---

[34] Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984).

[35] See Duhaime v. John Hancock Mut. Life Ins. Co., 183 F.3d 1, 2, 7 (1st Cir. 1999).

[36] In re TJX Cos., 584 F. Supp. 2d at 399 (citing Duhaime v. John Hancock Mut. Life Ins. Co., 989 F. Supp. 375, 379 (D. Mass. 1997)).

[37] See Class Counsels' Updated Statement Costs & Expenses [#246].

[38] In this group are four pro se parties (Dwight E. Nolt [#226], Mark Powell [#208], Chris Pavlou [#119] and Paul R. Worsham [#200]) and one "professional and generally unsuccessful objector," see In re Royal Ahold N.V. Sec. & ERISA Litig., 461 F. Supp. 2d 383, 386 (D. Md. 2006), the latter also called a "repeat objector," see In re Compact Disc Minimum Advertised Price Antitrust Litig., MDL 1361, 2003 U.S. Dist. LEXIS 25788, at *6 n.3 (D. Me. Oct. 7, 2003), Attorney John J. Pentz [#205].

are not Class Counsel but did represent some class members in some parts of these cases, who, while expressing words of opposition, seem primarily concerned that any award be large enough that there will be money available for them when Class Counsel make their allocations in later proceedings.

To determine whether there is a "fund" of the kind usually found in the POF method, this court first considers what will be available to the Settlement Class Members as a result of the now-approved settlement. The Agreement of Settlement provides for four specifically described benefits: (1) certain required warranty reimbursement payments; (2) a ten-year warranty extension; (3) a reduction of owners' future repair costs; and (4) a $25 oil change discount. Additionally, of course, the Agreement of Settlement provides for administration of the claims by the Oil Sludge Settlement Administrator and payment of Plaintiffs' Counsels' fees and costs by Defendants.

What is presented is not a single fund of money set aside out of which the Settlement Class Members will have entitlement to portions depending upon their presentation of appropriate claim forms. Rather, there is a composite of benefits, each depending upon the different circumstances of the claimants. Of the group of benefits, really only the one-time $25 discount for an oil change can be seen as coming close to an arithmetically measurable fund, although even it is not an amount of money set aside for that purpose. The other three benefits have significant value, but they are not payable out of an established fund. Rather, they fit more into what is sometimes called a "common benefit."[39]

Class Counsel has presented expert evidence in an attempt to value these settlement

---

[39] See, e.g., Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 393–94 (1970).

11

benefits. Defendants, while readily conceding that there is real value to each of the benefits, challenge what the total value of those benefits is. Class Counsel, relying upon their expert's November 30, 2010 report, initially suggested an aggregate value of the various benefits of $420,986,855. With similar reliance upon their own expert, on January 21, 2011, Defendants pegged the aggregate value at $50,093,787. These estimates resulted in a spread of about $370,000,000.

In the initial valuation, Class Counsels' expert included an amount of $39,250,000, which he suggested should have been considered as part of the value to the class. Defendants' counsel wholly opposed this amount. The $39,250,000 represents Class Counsels' claim for fees and costs. Without this amount in the mix, the difference between the parties initially was $381,736,955 for the Class and $45,424,181 for Defendants, or about $336,000,000.

Broken down by benefit or element, the following chart shows those differences.[40]

|  | Kleckner Estimates | Ordover Estimates |
|---|---|---|
| Required warranty reimbursement payments | $247,122,692 | $10,944,237 |
| Ten-year warranty extension | $56,615,996 | $12,012,438 |
| Reduction of owner future repair costs | $68,535,301 | $18,719,788 |
| Oil change discount | $3,362,263 | $3,362,263 |
| Claims administration | $6,100,703 | $385,455 |
| Professional costs | $39,250,000 | $4,669,606 |

---

[40] "Kleckner" is the Class Counsels' expert, and "Ordover" is Defendants' expert.

Following Ordover's critique of Kleckner's first estimates of value, Kleckner, on February 4, 2011, submitted a Rebuttal Report to the Special Master. In his Rebuttal, Kleckner revised his opinions in five ways. The Special Master focused primarily on those ways that produced lower estimates of value and did not include the $39,250,000 for fees and costs. The Special Master then determined, for the purposes of his assessment of the reasonableness of the fee request, an aggregate value of $222,932,831.[41]

Ordover was permitted by the Special Master to file his own response to Kleckner's Rebuttal. He did so on February 8, 2011. In that final response, Ordover offered nothing new by way of his own estimates of value, preferring to stand on his January 21, 2011 proffer. Ordover's response continued with his theme that Kleckner calculated his values using incorrect assumptions.

This court takes note of the Special Master's views in making its own assessment of the reasonableness of the fee request. It must be remembered, however, that this valuation is just a part of the court's overall effort to determine what a reasonable fee would be, considering the potential value of the benefits to the Settlement Class Members only as one, among many other, elements. It is not just the value of the benefits provided by the Agreement of Settlement that must be considered on the Fees Motion. This court has considered several other important factors in determining the fairness of the attorney fees sought. They include: the time and labor required; the novelty and difficulty of the questions and issues involved; the skill requisite to perform the legal

---

[41] Much of this came from a request by Class Counsel, which produced numbers even lower than Kleckner himself feels are justified.

The five amounts that make up this figure are: $87,056,149 for required warranty reimbursements; $73,938,851 for ten-year warranty extension; $56,249,605 for reduction of future repair costs; $3,362,263 for the oil change discount; and $2,325,963 for claims administration. See Kleckner's Rebuttal Report at 4–6.

13

services; customary rates for the services; the amounts involved and the results obtained; the experience, reputation, and ability of the attorneys; and awards in similar cases.[42]

This court observes, in passing, the statement in Defendants' expert's first report, in Section F at 21–22, that Class Counsel's fees and costs claims of $39,250,000 "represent[] 10.28% of the other five components of the valuation ($381,736,955)." Further, as noted above, the Special Master, using the Kleckner Rebuttal's lower estimates aggregating $222,932,831, observed that the $39,250,000 fees and costs application amounts to about 13.45% thereof.

"Those courts that have applied the percentage method have awarded counsel, on average, 20%-30% of the common fund."[43] Were this a lodestar approach, there might be an added multiplier.[44] In addition,

> [n]o one expects a lawyer to give his services at bargain rates in a civil matter on behalf of a client who is not impecunious. No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended. Yet unless time spent and skill displayed be used as a constant check on applications for fees there is a grave danger that the bar and bench will be brought into disrepute, and that there will be prejudice to those whose substantive interests are at stake and who are unrepresented except by the very lawyers who are

---

[42] See Haig, Business and Commercial Litigation in Federal Courts § 48:37, 950–52 (2d ed.). To the extent not specifically recited in this Memorandum, attention is directed to this court's Memorandum approving the class settlement itself, which is incorporated herein by reference.

[43] Id. § 16.79; see also In re Relefen, 231 F.R.D. 52, 81 (D. Mass. 2005); 4 Newberg on Class Actions § 14.6, p. 558 (4th ed. 2002).

[44] See, e.g., In re Tyco Int'l Ltd. Multidistrict Litig., 535 F. Supp. 2d 249, 271 (D.N.H. 2007) (multiplier of 2.697); In re Relafen, 231 F.R.D. at 82 (multiplier of 2.02); New Eng. Carpenters Health Benefits Fund v. 1st Databank, Inc., No. 05-11148, 2009 U.S. Dist. LEXIS 68419 (D. Mass. August 3, 2009) (multiplier of 8.3).

14

seeking compensation.[45]

No assessment of an application for attorneys' fees in a case like this in this district should avoid addressing Judge Young's "institutional" concerns expressed in In re TJX Companies.[46] Judge Young bluntly states that "[s]imply put, the class action vehicle is broken."[47] Despite his extensive discourse in In re TJX Companies, however, Judge Young awarded counsel there the full amount of the attorney fees applied for.[48]

Relatively early in the opinion, Judge Young notes that "to grant the petition [for fees] would . . . put more money in the pockets of the attorneys than in those of the wronged clients in whose name the suit was brought."[49] That, however, is not the situation in the request before this court, even if Defendants' much lower original estimate of value of $45,424,181 is used as a guide. Here, even Defendants acknowledge "Class Counsels' entitlement to an appropriate fee and reimbursement for costs and expenses."[50]

Another concern of Judge Young is that counsel may not design a settlement in a way that sufficiently reaches the Settlement Class Members and gives them incentive to participate in it. Such limitations do not exist here. The Notice to the class certified here was unusually well

---

[45] Cherner v. Transitron Elec. Corp., 221 F. Supp. 55, 61 (D. Mass. 1963).

[46] 584 F. Supp. 2d at 406.

[47] Id.

[48] Id. at 408.

[49] Id. at 402.

[50] See Welcome to the Information Website for the Oil Sludge Settlement, Docket No. 1:07-md-01790 https://wwwvwoilsludgesettlement.com (last visited March 21, 2011) (answering the question, "How will the lawyers be paid?").

15

designed to reach the Class Members. It was not just a fine-print publication in the back pages of a newspaper. Rather, it included first-class mail to each Class Member's home,[51] whose names and addresses were determined by the use of the respective Volkswagen and Audi automobiles' Vehicle Identification Numbers ("VIN") on record in each Registry of Motor Vehicles throughout the class area, the entire United States. In addition, the Notice is extremely detailed in its explanation of the benefits available to the Class and how they may be obtained, including, as mentioned above, the informational website.

Further, what the Class Members here are entitled to, among other things, is either 100% or 50% of the costs of a full automobile engine repair if sludge damage occurs, or had occurred in the past and been denied. Each of these repairs alone has a value in the hundreds, perhaps thousands, of dollars range for any engine so damaged. It was reported at the March 11, 2011 hearing that the amount was about $2,147 per claim for an oil sludge repair. That award is vastly more attractive to a Class Member than the "three years of credit monitoring" made available to qualifying customers in the In re TJX Companies settlement or the $10 gift card mentioned in the Bed, Bath & Beyond case cited by Judge Young in In re TJX Companies.[52]

Still further, there are no complicated barriers to relief for Settlement Class Members here. They either can prove their last two oil changes were proper and receive a 100% reimbursement for a sludge-damaged engine or, without any proof, still receive a 50% reimbursement. Both the

---

[51] On December 20, 2010, the Oil Sludge Administrator ("OSA"), mailed out 1,603,013 Notice packages to identified Class members. As of February 6, 2011, the OSA had received twenty requests for exclusion from the Class and six objections. See Doc. Pls.' Notice Filing Oil Sludge Settlement Administrator's Report Regard Reqs. Exclusion, Ex. 1 [#244].

[52] See 584 F. Supp. 2d at 405 n.15.

16

needs of the Settlement Class and their incentive to participate are well attended to.

Neither the time within which a Settlement Class Member here must make a claim nor the claim procedure to recover is narrow or burdensome. Additionally, there is already in place the sophisticated Oil Sludge Settlement Administrator who is assisting in the process. This is a kind of service that Judge Young found appropriate when assessing the value of settlement benefits in In re TJX Companies.[53]

Again, unlike the fear alluded to in In re TJX Companies,[54] there is no evidence in this matter of any efforts by Class Counsel pushing for high payout caps or fund amounts to expand the basis for their fee petition. The benefits here are essentially without caps and were all negotiated, and the Agreement of Settlement was signed, before discussions of attorney fees even began.

Class Counsel in this case were observed closely by the Special Master in their interaction with Defendants' counsel. He reports to this court that

> [o]n almost every issue, this has been a very hard-fought case, by very well-qualified counsel, on both sides. There is no evidence whatsoever of Class Counsel "placing their interests before those of the [Settlement Class] or . . . failing to give adequate thought to matters such as how the [Class Members] may best be reached or what benefits may most be appreciated."[55]

In addition to utilizing the POF method, this court has considered Class Counsels' lodestar presentation as a cross-check.[56] A lodestar is "a presumptively reasonable fee."[57] Class Counsel

---

[53] See id. at 402 n.13.

[54] See id. at 405.

[55] Findings of Fact, Conclusions of Law & Recommendation Special Master Relating Class Pls.' Mot. Atty's Fees & Costs [#248] (quoting In re TJX Cos., 584 F. Supp. 2d at 406).

[56] See, e.g., In re Tyco., 535 F. Supp. 2d at 270; In re Relefen, 231 F.R.D. at 79, 81.

[57] E.g., Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992).

17

say they spent a total of 23,191 attorney and staff hours in the prosecution of these consolidated cases. In a process approved by this court, the Special Master made an across-the-board one-third reduction for what may be unnecessary hours, thereby reducing the number to 15,468. He then multiplied those hours by $500 per hour to produce a lodestar, before any multiplier, of $7,734,000. "In this Circuit, a Court reviewing a fee petition under the lodestar method is not required to wade through every billed hour, every claimed service, and charged expense, effectively conducting an audit of plaintiffs' fee petition and then issue a telephone book of minute findings."[58]

Assuming a multiplier of 2.50,[59] this court observes a lodestar amount of $19,335,000.[60] Defendants' attorneys ask the court to defer ruling on the Fees Motion until June 27, 2011, which is the date when they say it can be known with certainty how many claims there are and, therefore, the value of that segment of the benefits to the class. This reasoning seems inaccurate because the ten-year warranty will not expire until 2014. More importantly, the measurement should not be what benefits are claimed by the class but rather what benefits are made available by counsel to be claimed.[61] Consequently, the decision on fees should not be delayed.

---

[58] Mem. Points & Authorities Supp. Mot Final Approval Settlement Opp'n Pls.' Mot. Att'y Fees & Costs & Supp. Appl. Defer Ruling Pls.' Mot. Att'y Fees & Costs Until After June 27, 2011, 209 [#206]; see also Foley v. City of Lowell, 948 F.2d 10, 20 (1st Cir. 1991) (affirming a blanket one-third reduction of plaintiffs' counsel's lodestar hours).

[59] See, e.g., In re Tyco., 535 F. Supp. 2d at 271 (multiplier of 2.697); In re Relafen, 231 F.R.D. at 82 (multiplier of 2.02); New Eng. Carpenters, 2009 U.S. Dist. LEXIS 68419, at *10 (multiplier of 8.3).

[60] See In re TJX Cos., 584 F. Supp. 2d at 408.

[61] See, e.g., Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436–37 (2d Cir. 2007); Waters v. Int'l Precision Metals Corp., 190 F.3d 1291, 1294–95 (11th Cir. 1999);

18

Understandably, what Defendants seek is the lowest possible fee, because they are the ones who agreed to pay it. That, however, is not the measure. It is not the obligation of this court to set the fee at the lowest amount possible but rather to determine whether the fees sought are "reasonable." Here the fees are not coming out of the Class Members' benefits. Rather, the fees come from Defendants' knowing agreement to pay so long as the amount does not exceed $37,500,000 and this court determines that the amount is reasonable. This process—deciding if the fees sought and awarded are reasonable—is what is mandated by Rule 23(h).

## ORDER

For the foregoing reasons, this court ADOPTS the Special Master's recommendation that an award be made on the Motion for Attorneys' Fees and Costs [#174] of $30,000,000 for attorney fees and $1,195,234.43 for costs and expenses, aggregating $31,195,234.43.

Additionally, this court orders that any funds to be paid by Defendants as attorney fees or costs be held, subject to a specific Order of the Special Master, either until after the conclusion of any process established by him as referred to above and in #211, or for such partial payments as may be deemed by him to be appropriate.

Defendants' request to defer the determination of attorney fees and costs is DENIED.

Finally, all other objections to the fees and costs application are DENIED, consistent with the determinations contained herein.

IT IS SO ORDERED.

    /s/ Joseph L. Tauro

---

Williams v. MGM-PATHE Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir. 1997).

United States District Judge

20